

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

2015 OCT 29 PM 1:16

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No.  3:15 cr-148 |
| | ) | |
| Plaintiff, | ) | I N D I C T M E N T |
| | ) | |
| v. | ) | |
| | ) | 18 U.S.C. § 664 |
| 1. WILLIAM M. APOSTELOS | ) | 18 U.S.C. § 1001 |
| | ) | 18 U.S.C. § 1341 |
| 2. CONNIE M. APOSTELOS | ) | 18 U.S.C. § 1343 |
| | ) | 18 U.S.C. § 1349 |
| | ) | 18 U.S.C. § 1957 |
| Defendants. | ) | FORFEITURE |

The Grand Jury charges:

COUNT ONE

[18 U.S.C. § 1349]

I.   INTRODUCTION

At all times relevant to this Indictment:

1.   Defendant **WILLIAM M. APOSTELOS** operated and oversaw

multiple purported investment and asset management companies,

including, but not limited to:  WMA Enterprises, LLC ("WMA");

Midwest Green Resources, LLC ("Midwest Green"); and Roan Capital.

Operating these entities from the Dayton, Ohio metropolitan area,

defendant **WILLIAM M. APOSTELOS** - with the assistance of others,

including defendant **CONNIE M. APOSTELOS** - fraudulently induced

hundreds of individuals from around the country to invest

Page **1** of **32**

collectively over $70 million in funds with him.  In doing so,
defendant **WILLIAM M. APOSTELOS** repeatedly misrepresented his
background to many investors, falsely reporting, among other things,
that he held a degree in mathematics and that he was a registered
securities broker.

    2.   Defendant **CONNIE M. APOSTELOS, also known as Connie
Coleman,** operated and oversaw multiple companies, including Coleman
Capital, Inc. ("Coleman Capital") and Silver Bridle Racing, LLC
("Silver Bridle").  Through Coleman Capital, which operated in the
Dayton, Ohio metropolitan area, defendant **CONNIE M. APOSTELOS** hired
and managed the employees who handled the day-to-day administrative
work of defendant **WILLIAM M. APOSTELOS's** various purported
investment companies, including WMA and Midwest Green.  Given her
position at Coleman Capital, defendant **CONNIE M. APOSTELOS** arranged
that she receive an electronic carbon copy of any email
correspondence sent from defendant **WILLIAM M. APOSTELOS's** purported
investment companies to investors.  Through Silver Bridle,
defendant **CONNIE M. APOSTELOS** raised and raced thoroughbred horses,
including the horses "Baryshnikov" and "Shanon Nicole."
Unbeknownst to investors in, among other entities, WMA and Midwest
Green, defendants **WILLIAM M. APOSTELOS** and **CONNIE M. APOSTELOS**
improperly used investor funds to operate Coleman Capital and Silver
Bridle.

II. THE CONSPIRACY AND ITS OBJECTS

3. Beginning on an exact date unknown, but at least by 2009, and continuing through in or around March 2015, in the Southern District of Ohio, and elsewhere, defendants **WILLIAM M. APOSTELOS**, **CONNIE M. APOSTELOS**, and others known to the Grand Jury, acting with intent to defraud, knowingly and intentionally conspired:

a. to devise, execute, and participate in a scheme to defraud investors and to obtain money and property owned by and under the custody and control of investors, by means of materially false and fraudulent pretenses, representations, and promises, and the non-disclosure and concealment of material facts, and for the purpose of carrying out and executing such scheme or artifice, caused items to be deposited and to be sent and delivered by the United States Postal Service as well as private and commercial interstate carriers, in violation of Title 18, United States Code, Section 1341, the federal mail fraud statute; and

b. to devise, execute, and participate in a scheme to defraud investors and to obtain money and property owned by and under the custody and control of investors, by means of materially false and fraudulent pretenses, representations, and promises, and the non-disclosure and concealment of material facts, and for the purpose of carrying out and executing such scheme or artifice, caused the transmission of writings, signs, and signals by means of wire

Page **3** of **32**

communication in interstate commerce, in violation of Title 18,
United States Code, Section 1343, the federal wire fraud statute.

III. THE MANNER AND MEANS OF THE CONSPIRACY

Defendants **WILLIAM M. APOSTELOS**, **CONNIE M. APOSTELOS**, and
others known to the Grand Jury intended to accomplish the objects
of the conspiracy as follows:

4. Defendants **WILLIAM M. APOSTELOS**, **CONNIE M. APOSTELOS**, and
others known to the Grand Jury fraudulently convinced hundreds of
individuals from throughout the United States to place large sums
of money for investment with, or under the management of, WMA and
Midwest Green. In doing so, defendants **WILLIAM M. APOSTELOS**, **CONNIE
M. APOSTELOS**, and others known to the Grand Jury falsely advised
investors that all of the investors' money would be used for
investment purposes, including, but not limited to: acquiring stocks
or securities; purchasing real estate or land; providing bridge
loans/hard money loans to businesses; and buying precious metals such
as gold and silver. For instance, **WILLIAM M. APOSTELOS**, **CONNIE M.
APOSTELOS**, and others known to the Grand Jury falsely told various
clients that their funds had been placed in various investment
vehicles, including, but not limited to:

a. Purported T.D. Ameritrade Stock Accounts: **WILLIAM M.
APOSTELOS**, **CONNIE M. APOSTELOS**, and others known to the Grand Jury
falsely informed various clients that WMA and other defendant **WILLIAM**

M. **APOSTELOS's** investment companies had invested certain clients' funds in the stock market through legitimate companies, such as T.D. Ameritrade. To provide validity to their fraudulent claims, defendants **WILLIAM M. APOSTELOS**, **CONNIE M. APOSTELOS**, and others known to the Grand Jury provided these clients with access to a website that purported to track the clients' investments in the stock market. In reality, defendants **WILLIAM M. APOSTELOS**, **CONNIE M. APOSTELOS**, and others known to the Grand Jury had directed their clients to an Investools website/account -- a stock trading simulator designed to educate investors through the creation and management of mock stock portfolios. Phrased differently, defendants **WILLIAM M. APOSTELOS**, **CONNIE M. APOSTELOS**, and others known to the Grand Jury intentionally misled investors by falsely indicating that the Investools account reflected actual stock purchases that WMA and other defendant **WILLIAM M. APOSTELOS's** companies had made on behalf of these investors.

b. <u>Purported Nevada and Kentucky Land Deals</u>: Defendants **WILLIAM M. APOSTELOS**, **CONNIE M. APOSTELOS**, and others known to the Grand Jury falsely represented that they used various client funds to acquire and develop high-value real estate in, among other places, Nevada and Kentucky. In doing so, defendant **WILLIAM M. APOSTELOS** provided investors with false and fraudulent documents that purported to confirm the existence or value of these properties.

Additionally, defendants **WILLIAM M. APOSTELOS** and **CONNIE M. APOSTELOS** misrepresented to clients the extent of their real estate holdings in Nevada - landholdings that consisted of unimproved, desert parcels in the state's undeveloped interior with such little value that the yearly property taxes on these tracts of land did not exceed $500.

        c.    Purported Short Term Bridge Loans/Hard Money Loans: Defendants **WILLIAM M. APOSTELOS**, **CONNIE M. APOSTELOS**, and others known to the Grand Jury falsely advised that they used investor funds to make short term bridge loans or hard money loans to businesses or individuals in need of brief, but urgent, cash infusions to purchase properties or complete business projects. To further induce investors, defendants **WILLIAM M. APOSTELOS** and **CONNIE M. APOSTELOS** falsely promised clients that these short term bridge loans would generate substantial returns ranging from ten percent to sixty percent return on investment. In reality, defendants **WILLIAM M. APOSTELOS** and **CONNIE M. APOSTELOS** did not provide substantial short term bridge loans or hard money loans to businesses or individuals.

        d.    Purported Precious Metal Purchases: **WILLIAM M. APOSTELOS**, **CONNIE M. APOSTELOS**, and others known to the Grand Jury falsely stated that they invested certain client funds through the purchase of precious metals, including gold and silver. To provide legitimacy to this claim, defendant **WILLIAM M. APOSTELOS** kept on his

desk at WMA's offices what purported to be a solid silver bar; in reality, the object was simply a block wrapped in silver colored foil. Rather than investing these funds as promised, defendants **WILLIAM M. APOSTELOS** and **CONNIE M. APOSTELOS** used only a small portion of clients' money to acquire nominal amounts of precious metals, which they (defendants **WILLIAM M. APOSTELOS** and **CONNIE M. APOSTELOS**) promptly sold.

     e.  <u>Purported 401K Management</u>: Defendants **WILLIAM M. APOSTELOS, CONNIE M. APOSTELOS**, and others known to the Grand Jury falsely represented that they invested or managed funds as part of, or on behalf of, 401K plans. Based on their assurances that they would use clients' money for legitimate investments, defendants **WILLIAM M. APOSTELOS, CONNIE M. APOSTELOS**, and others known to the Grand Jury fraudulently induced at least one business to transfer to defendants **WILLIAM M. APOSTELOS's** and **CONNIE M. APOSTELOS's** management, supervision and investment authority over its 401K plan.

     f.  <u>Purported Creation of a Bank</u>: Defendant **WILLIAM M. APOSTELOS** falsely advised various investors that he intended to use their money to charter a bank in the Dayton, Ohio area. Defendant **WILLIAM M. APOSTELOS** failed to use investor funds to form or start a bona fide financial institution.

5. Rather than using investors' money as promised – namely, for the purported investments described above – defendants **WILLIAM M. APOSTELOS**, **CONNIE M. APOSTELOS**, and others known to the Grand Jury intentionally diverted their clients' funds for illegal and improper purposes, including, but not limited to, the operation of a "Ponzi" scheme as well the payment of commissions to recruiters. In particular:

a. As opposed to investing their clients' funds as represented, defendants **WILLIAM M. APOSTELOS** and **CONNIE M. APOSTELOS** fraudulently diverted a substantial portion of this money and used it to make purported investment payments to earlier investors in their various companies, including, but not limited to, WMA and Midwest Green. In doing so, defendants **WILLIAM M. APOSTELOS** and **CONNIE M. APOSTELOS** falsely represented that the money comprising these alleged payments reflected bona fide returns or interest on clients' investments; in actuality, **WILLIAM M. APOSTELOS** and **CONNIE M. APOSTELOS** knew that the funds used to make these purported payments had come, not from profits of bona fide investments, but rather their misappropriation of money from their other investors.

b. Additionally, without the approval or consent of their investors, defendants **WILLIAM M. APOSTELOS** and **CONNIE M. APOSTELOS** improperly used client funds to finance and operate their (defendants **WILLIAM M. APOSTELOS's** and **CONNIE M. APOSTELOS's**)

various personal business ventures, including, but not limited to, Coleman Capital and Silver Bridle.

     c.   In a similar fashion, **WILLIAM M. APOSTELOS** and **CONNIE M. APOSTELOS** improperly diverted client funds for their personal benefit, including, but not limited to: gambling at casinos; financing their personal residence; as well as purchasing clothing, vehicles, and other personal property.

     6.   To provide false assurances to investors concerning the safety and security of their investments as well to prevent detection of the improper diversion of funds, defendants **WILLIAM M. APOSTELOS, CONNIE M. APOSTELOS,** and others known to the Grand Jury engaged in a pattern of fraudulent and misleading conduct toward the investors. For instance:

     a.   Defendant **WILLIAM M. APOSTELOS** falsely informed certain investors that he held not only a degree in mathematics from Wright State University but also a license to sell securities. Although **WILLIAM M. APOSTELOS** briefly attended college during the late 1970s and early 1980s, he never graduated from Wright State University with a degree in any subject. Nor do public records reflect that **WILLIAM M. APOSTELOS** ever held a license to sell securities.

     b.   Defendants **WILLIAM M. APOSTELOS** and **CONNIE M. APOSTELOS** provided investors with promissory notes that purported

to guarantee not only the investor's principal itself but also a fixed rate of return on the investment. To falsely provide legitimacy to these documents, defendants **WILLIAM M. APOSTELOS** and **CONNIE M. APOSTELOS** authorized and caused purported interest payments or return of principal to be made to certain investors. Falsely representing that the money comprising these payments reflected a partial return on a client's investment, defendants **WILLIAM M. APOSTELOS** and **CONNIE M. APOSTELOS** knew that the funds used to make these payments had come, not from profits on investments, but from their theft of money from other investors. Notably, defendants **WILLIAM M. APOSTELOS** and **CONNIE M. APOSTELOS** often caused these promissory notes to be mailed or wired to investors.

      c. Defendants **WILLIAM M. APOSTELOS** and **CONNIE M. APOSTELOS** intentionally misled many investors, indicating that third-party entities, such as PENSCO Trust Co., Kingdom Trust, and Millennium Trust, maintained control over and effectively safeguarded the investors' funds from misappropriation. Phrased differently, defendant **WILLIAM M. APOSTELOS** falsely indicated that, while he instructed these third party entities where and how to invest clients' funds, the entities – not him – had possession of the investors' money. In reality, these third party entities served a largely administrative function in the investment process, merely recording the investors' principal and gains as reported to them by

defendants **WILLIAM M. APOSTELOS** and **CONNIE M. APOSTELOS**. Moreover, defendants **WILLIAM M. APOSTELOS** and **CONNIE M. APOSTELOS** failed to disclose that they merely utilized these third-party entities as a pass-through mechanism through which investors actually delivered their money to the control of WMA or Midwest Green.

      d.   Defendants **WILLIAM M. APOSTELOS** and **CONNIE M. APOSTELOS**, and others known to the Grand Jury also provided false and fraudulent account statements to their investors. Despite having improperly diverted their investors' funds, defendants **WILLIAM M. APOSTELOS** and **CONNIE M. APOSTELOS** caused to be prepared false documents that misrepresented the status and growth of clients' investments.

      e.   To additionally assure some investors concerning the legitimacy of his operations, defendant **WILLIAM M. APOSTELOS** and others known to the Grand Jury falsely reported to them that a property located in southern Ohio (often referred to as the South Vienna Farm) served as collateral and secured their investments.

      f.   As **WILLIAM M. APOSTELOS** and **CONNIE M. APOSTELOS** began to fall behind on purported interest payments to their investors as well as to delay repayment of investors' principal, defendants **WILLIAM M. APOSTELOS** and **CONNIE M. APOSTELOS** instructed their employees to provide investors with false and fraudulent excuses for the non-payments. For instance, defendants **WILLIAM M. APOSTELOS** and

Page **11** of **32**

**CONNIE M. APOSTELOS** caused investors to be falsely told, among other things, that: WMA's bank accounts had been hacked; a bank mistakenly had failed to wire or issue the investor's payment; defendant **WILLIAM M. APOSTELOS** was travelling for work and was unavailable to address the non-payment problem; or the deal the client had invested in was temporarily on hold.

g.    Defendant **WILLIAM M. APOSTELOS** used the services of various attorneys to delay and prevent detection of his scheme. Notably, as defendants **WILLIAM M. APOSTELOS** and **CONNIE M. APOSTELOS** fell behind on payments to their clients, a number of investors initiated legal actions against them.  Through various attorneys, defendant **WILLIAM M. APOSTELOS** falsely assured at least one investor that he, **WILLIAM M. APOSTELOS**, intended to liquidate assets to settle fully his debts with the investor.   Improperly using funds from other investors, **WILLIAM M. APOSTELOS** wired a payment of approximately $200,000 to his attorney's bank account as a partial satisfaction of his obligations to the investor.   Despite the assurances from his counsel that defendant **WILLIAM M. APOSTELOS** intended to make a series of payments to the investor, defendant **WILLIAM M. APOSTELOS** failed to do so.

h.    Moreover, even after federal agents conducted search warrants on his business during October 2014, defendant **WILLIAM M. APOSTELOS** repeatedly and falsely assured former clients that their

investments remained safe. As late as in or around February 2015, defendant **WILLIAM M. APOSTELOS** not only continued to solicit individuals to invest in his fraudulent schemes but also engaged in efforts to start a new purported investment company that would be "fronted" by another individual.

7. To further execute the scheme, defendants **WILLIAM M. APOSTELOS** and **CONNIE M. APOSTELOS**, and others known to the Grand Jury, knowingly concealed and failed to disclose to investors the true facts about their fraudulent conduct and the investment scheme. The facts concealed and not disclosed were material in that, had prospective clients known the true facts concerning the fraudulent conduct and the investment scheme of defendants **WILLIAM M. APOSTELOS** and **CONNIE M. APOSTELOS**, the investors would not have entrusted their money for investment with defendants **WILLIAM M. APOSTELOS** and **CONNIE M. APOSTELOS**.

8. As a result of their actions and by devising, executing, and participating in the investment scheme, defendants **WILLIAM M. APOSTELOS** and **CONNIE M. APOSTELOS** caused their investors to lose collectively over $30 million.

All in violation of Title 18, United States Code, Section 1349.

COUNTS TWO THROUGH NINE

[18 U.S.C. § 1341]

I.   INTRODUCTION

9.   The allegations of paragraphs 1 through 2 of this
Indictment are realleged and incorporated by reference as though set
forth in full.

II.  THE SCHEME TO DEFRAUD AND ITS EXECUTION

10.   Beginning on an exact date unknown, but at least by 2009,
and continuing through in or around March 2015, in the Southern
District of Ohio, and elsewhere, defendants **WILLIAM M. APOSTELOS** and
**CONNIE M. APOSTELOS,** and others known to the Grand Jury, aiding and
abetting each other, knowingly and with the intent to defraud,
devised, executed, and participated in a scheme to defraud investors
and to obtain money and property owned by and under the custody and
control of investors, by means of materially false and fraudulent
pretenses, representations, and promises, and the non-disclosure and
concealment of material facts through a fraudulent investment
scheme.

11.   The scheme was designed to operate and did operate as
described above in paragraphs 4 through 8 of this Indictment.

III. THE MAILINGS

12.  On or about the dates listed below, in the Southern
District of Ohio, defendants **WILLIAM M. APOSTELOS, CONNIE M.**

Page **14** of **32**

**APOSTELOS**, and others known to the Grand Jury, aiding and abetting each other, for the purpose of carrying out the above-described scheme to defraud, caused the items described below to be deposited and to be sent and delivered by the United States Postal Service as well as private and commercial interstate carriers:

| COUNT | DEFENDANTS | DATE | MAIL MATTER |
|---|---|---|---|
| TWO | **WILLIAM M. APOSTELOS**<br><br>**CONNIE M. APOSTELOS** | 4/8/11 | Check for $10,000 sent via United States mail from Nationwide Trust FBS to Midwest Green in Kettering, Ohio |
| THREE | **WILLIAM M. APOSTELOS**<br><br>**CONNIE M. APOSTELOS** | 7/26/11 | Promissory note sent via Federal Express from Kettering, Ohio to an individual identified herein as R.C. |
| FOUR | **WILLIAM M. APOSTELOS**<br><br>**CONNIE M. APOSTELOS** | 2/29/12 | Promissory note sent via United States mail from Springboro, Ohio to individuals identified herein as K.H and L.H. |
| FIVE | **WILLIAM M. APOSTELOS**<br><br>**CONNIE M. APOSTELOS** | 1/18/13 | Promissory note sent via United States mail from Springboro, Ohio to an individual identified herein as F.S. |
| SIX | **WILLIAM M. APOSTELOS**<br><br>**CONNIE M. APOSTELOS** | 5/29/13 | Promissory note and PENSCO memo sent via United States mail from Springboro, Ohio to an individual identified herein as M.S. |
| SEVEN | **WILLIAM M. APOSTELOS**<br><br>**CONNIE M. APOSTELOS** | 5/20/14 | Check for approximately $113,758.18 sent via Federal Express from Springboro, Ohio to an individual identified herein as K.F. |

| COUNT | DEFENDANTS | DATE | MAIL MATTER |
|-------|-----------|------|-------------|
| EIGHT | WILLIAM M. APOSTELOS<br><br>CONNIE M. APOSTELOS | 5/22/14 | Promissory note sent via United States mail from Springboro, Ohio to an individual identified herein as E.H. |
| NINE | WILLIAM M. APOSTELOS<br><br>CONNIE M. APOSTELOS | 10/24/14 | Check for approximately $12,000 sent via United States mail from Springboro, Ohio to an individual identified herein as W.K. |

In violation of Title 18, United States Code, Sections 1341 and 2, and Pinkerton v. United States, 328 U.S. 640 (1946).

COUNTS TEN THROUGH TWENTY-THREE

[18 U.S.C. § 1343]

I.    INTRODUCTION

13.    The allegations of paragraphs 1 through 2 of this Indictment are realleged and incorporated by reference as though set forth in full.

II.    THE SCHEME TO DEFRAUD AND ITS EXECUTION

14.    Beginning on an exact date unknown, but at least by 2009, and continuing through in or around March 2015, in the Southern District of Ohio, and elsewhere, defendants WILLIAM M. APOSTELOS and CONNIE M. APOSTELOS and others known to the Grand Jury, aiding and abetting each other, knowingly and with the intent to defraud, devised, executed, and participated in a scheme to defraud investors

and to obtain money and property owned by and under the custody and control of investors, by means of materially false and fraudulent pretenses, representations, and promises, and the non-disclosure and concealment of material facts through a fraudulent investment scheme.

15.    The scheme was designed to operate and did operate as described above in paragraphs 4 through 8 of this Indictment.

III. THE WIRINGS

16.    On or about the dates listed below, in the Southern District of Ohio, and elsewhere, defendants **WILLIAM M. APOSTELOS**, **CONNIE M. APOSTELOS,** and others known to the Grand Jury, aiding and abetting each other, for the purpose of carrying out the above-described scheme to defraud, caused the transmission of the following writings, signs, and signals, by means of wire communication in interstate commerce:

| COUNT | DEFENDANTS | DATE | INTERSTATE WIRE |
|-------|------------|------|-----------------|
| TEN | **WILLIAM M. APOSTELOS**<br><br>**CONNIE M. APOSTELOS** | 11/18/11 | Interstate Facsimile from Springboro, Ohio to Pensco Trust Co. |
| ELEVEN | **WILLIAM M. APOSTELOS**<br><br>**CONNIE M. APOSTELOS** | 8/6/12 | Interstate wire transfer of $1,000,000 from Huntington Bank Account belonging to an entity identified herein as D.D., Inc., to PNC Bank in the Southern District of Ohio |

| TWELVE | WILLIAM M. APOSTELOS<br><br>CONNIE M. APOSTELOS | 4/23/13 | Interstate Docusign from Springboro, Ohio to an individual identified herein as F.S. |
|---|---|---|---|
| THIRTEEN | WILLIAM M. APOSTELOS<br><br>CONNIE M. APOSTELOS | 3/4/14 | Interstate Docusign from Springboro, Ohio to an individual identified herein as W.K. |
| FOURTEEN | WILLIAM M. APOSTELOS<br><br>CONNIE M. APOSTELOS | 3/24/14 | Interstate Docusign from Springboro, Ohio to an individual identified herein as H.B. |
| FIFTEEN | WILLIAM M. APOSTELOS<br><br>CONNIE M. APOSTELOS | 4/23/14 | Interstate Docusign from Springboro, Ohio to an individual identified herein as R.B. |
| SIXTEEN | WILLIAM M. APOSTELOS<br><br>CONNIE M. APOSTELOS | 5/12/14 | Interstate access from Springboro, Ohio of Investools Website for an individual identified herein by the J.D. |

| COUNT | DEFENDANTS | DATE | INTERSTATE WIRE |
|---|---|---|---|
| SEVENTEEN | WILLIAM M. APOSTELOS<br><br>CONNIE M. APOSTELOS | 6/19/14 | Interstate text message from Springboro, Ohio to an individual identified herein by the initials R.H. |
| EIGHTEEN | WILLIAM M. APOSTELOS<br><br>CONNIE M. APOSTELOS | 6/19/14 | Interstate email from the Southern District of Ohio to an individual identified herein by the initials P.V.M. |
| NINETEEN | WILLIAM M. APOSTELOS<br><br>CONNIE M. APOSTELOS | 7/27/14 | Interstate Docusign from Springboro, Ohio to an individual identified herein as C.C. |
| TWENTY | WILLIAM M. APOSTELOS<br><br>CONNIE M. APOSTELOS | 7/29/14 | Interstate email from Springboro, Ohio to an individual identified herein by the initials M.P. |
| TWENTY-ONE | WILLIAM M. APOSTELOS<br><br>CONNIE M. APOSTELOS | 8/11/14 | Interstate Docusign from Springboro, Ohio to an individual identified herein as D.S. |
| TWENTY-TWO | WILLIAM M. APOSTELOS<br><br>CONNIE M. APOSTELOS | 10/21/14 | Interstate email from the Southern District of Ohio to defendant **WILLIAM M. APOSTELOS** |
| TWENTY-THREE | WILLIAM M. APOSTELOS<br><br>CONNIE M. APOSTELOS | 11/1/14 | Interstate email from the Southern District of Ohio to an individual identified herein by the initials K.H. |

In violation of Title 18, United States Code, Sections 1343 and 2, and Pinkerton v. United States, 328 U.S. 640 (1946).

Page **19** of **32**

## COUNT TWENTY-FOUR

[18 U.S.C. § 664]

17.   Between in or around November 2010 and in or around August 2012, in the Southern District of Ohio, defendants **WILLIAM M. APOSTELOS**, **CONNIE M. APOSTELOS**, and others known to the Grand Jury, aiding and abetting each other, embezzled, stole, and unlawfully and willfully abstracted and converted to their own use in the approximate amount of $1.9 million, the moneys, funds, securities, premiums, credits, property and other assets of an employee pension benefit plan, identified herein by the acronym "B.T.F., Inc., 401K Plan", subject to Title I of the Employee Retirement Income Security Act of 1974 and of a fund connected with such plan.

In violation of Title 18, United States Code, Sections 664 and 2.

## COUNTS TWENTY-FIVE THROUGH TWENTY-SIX

[18 U.S.C. § 1957]

18.   On or about the dates listed below, in the Southern District of Ohio, defendants **WILLIAM M. APOSTELOS** and **CONNIE M. APOSTELOS**, aiding and abetting each other, knowingly engaged and attempted to engage in the monetary transactions listed below, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from specified unlawful activities – namely, mail fraud in

violation of Title 18, United States Code, Section 1341, and wire

fraud in violation of Title 18, United States Code, Section 1343:

| COUNT | DEFENDANTS | DATE | FINANCIAL TRANSACTION |
|-------|-----------|------|----------------------|
| TWENTY-FIVE | **WILLIAM M. APOSTELOS**<br><br>**CONNIE M. APOSTELOS** | 2/22/12 | Partial payment towards 6294 Township Line Road, Waynesville, Ohio using monetary instruments totaling approximately $150,658.75. |
| TWENTY-SIX | **WILLIAM M. APOSTELOS**<br><br>**CONNIE M. APOSTELOS** | 12/10/12 | Partial payment towards the purchase of 35 Commercial Way, Springboro, Ohio using a cashier's check drawn on PNC Bank in the amount of $244,000 |

All in violation of Title 18, United States Code, Sections 1957

and 2.

## COUNT TWENTY-SEVEN

[18 U.S.C. § 1001]

19.  On or about October 29, 2014, in the Southern District of

Ohio, in a matter within the jurisdiction of the Internal Revenue

Service, a department and agency of the executive branch of the United

States, defendant **CONNIE M. APOSTELOS** willfully and knowingly made,

and caused to be made, a materially false, fictitious, and fraudulent

statement and representation concerning from where the money in WMA

bank accounts had come.

20.  More precisely, in response to questions from a special

agent of the Internal Revenue Service, Criminal Investigations,

defendant **CONNIE M. APOSTELOS** represented that she had no idea where the money came from to fund WMA's bank accounts and advised the special agent that the special agent "would have to ask Bill[, *i.e.*, William Apostelos)."

21.  At the time defendant **CONNIE M. APOSTELOS** made this above referenced statement and representation, she knew that it was false in that, defendant **CONNIE M. APOSTELOS** routinely monitored WMA's bank accounts and knew that these accounts were funded through investors' money.

In violation of Title 18, United States Code, Section 1001(a)(2).

FORFEITURE

22.  Upon conviction of any offense alleged in Counts One through Twenty-Three of this Indictment, the defendants, **WILLIAM M. APOSTELOS and CONNIE M. APOSTELOS,** shall forfeit to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to said violation, including but not limited to the following:

    a.   Race Horse Named Shanon Nicole, net sale proceeds in the amount of $195,772.50;

    b.   Race Horse Named Baryshnikov, net sale proceeds in the amount of $3,900.50;

c.   Zia Park Racetrack, net racing proceeds, in the amount of $27,548.00;

d.   Sam Houston Racepark, net racing proceeds, in the amount of $40,546.00;

e.   Account #****2934, US Bank, in the name of Silver Bridle Racing, LLC, in the amount of $108,902.18;

f.   Account #****3007, US Bank, in the name of Silver Bridle Racing, LLC, in the amount of $22,158.63;

g.   Account #****4687, US Bank, in the name of Connie Apostelos, in the amount of $1,599.75;

h.   Account #****9796, Key Bank, in the name of WMA Enterprises, LLC, in the amount of $125,509.60;

i.   Account #****9960, Key Bank, in the name of Coleman Capital, Inc, in the amount of $8,012.75;

j.   Account #**** 9978, Key Bank, in the name of Coleman Capital, Inc, in the amount of $13,940.72;

k.   Account #****1028, Key Bank, in the name of Connie Apostelos, in the amount of $2,376.34;

l.   Account #****9788, Key Bank, in the name of Midwest Green Resources, LLC, in the amount of $616.83;

m.   Account #****8300, JP Morgan Chase Bank, in the name of William or Connie Apostelos, in the amount of $2,568.42;

n.   Account #****1858, JP Morgan Chase Bank, in the name of Apostelos Enterprises, Inc, in the amount of $1,964.76;

o.   $10,007.00 in U.S. Currency;

p.   $1,000.00 in U.S. Currency;

q.   2005 Seadoo Challenger boat w/trailer, SN: JS-CFC30985E505;

r.   2008 BMW M3, VIN: WBSWL93548PL89282;

s.   2008 Kawasaki Teryx KRF 750 Gator ATV,
     VIN: obliterated;

t.   2008 Sun-Lite Rattler Camper, Model 7H T21,
     VIN: 1S4BU212783016096;

u.   2009 4-Star Gooseneck Horse Trailer,
     VIN: 4FKPG192190030562;

v.   Miscellaneous artwork/sculptures consisting of the
     following:

     1.   One Bronze Figure of Knight "Knight Soldier"
          with Bronze Base 22x29x24;

     2.   One Standing Bronze Horse with Bronze
          Base 86x64;

     3.   Two Silver Horses on Wood Base 20x15;

     4.   One Horse Colored Bronze "Marius" Marked, with
          2-Color Marble Base 26x16;

     5.   One Chinese Temple Horse, Bronze 43x34;

     6.   One Black Murano Glass Horse 15x9;

     7.   One Silver Chariot with Driver and 2 Horses
          23x15;

     8.   One Amethyst Base Bronze Horse Head "Ebane
          Bronce" 19x10;

     9.   One Bronze Running Cheetah on Bronze Base 40x64;

w.   Miscellaneous Jewelry consisting of the following:

     1.   One 14K White Gold Diamond Engagement Ring;

     2.   One Man's "Tourneau" Haute Horlogerie Diamond
          Watch;

     3.   One Man's "Tourneau" Watch with White Face and
          Diamond Bezel;

4.    One Tag Heuer Man's Watch "Carrera Calibre"
1887, SN:CUZA10EWM140Z;

x.   All right, title and interest (including any
leasehold interest) in the whole of any lot or tract
of land and any appurtenances or improvements, to the
real property commonly known as **35 Commercial Way,
Springboro, Ohio 45066** and having the following legal
description;

Situated in the City of Springboro, Warren County,
Ohio and being part of Lot 1, Springboro Commercial
Park (Plat Book 31, Pages 83 and 84) and part of a
0.872 acre tract in Section 19, Town 2, Range 5, and
being more particularly described as follows:

Beginning at an iron pin found at the northwest corner
of Lot 1, Springboro Commercial Park, said pin also
being in the southerly right-of-way line of
Commercial Way (60' right-of-way); thence along said
right-of-way and with the northerly line of said Lot
1, the following three (3) courses and distances:

(1) N 59 19' 48" E. a distance of 44.27 feet;

(2) Along a curve to the right having a radius of
170.00 feet and an arc length of 85.02 feet, the chord
of said curve bears N. 73 39' 26" E. a distance of
84.14 feet;

(3) N 87 59' 05" E. a distance of 158.24 feet to a
5/8" iron pin set in a new division line;

Thence leaving said right-of-way line and along said
new division line, S 06 39' 20" W. a distance of 161.05
feet to a 5/8" iron pin set in the northerly line of
Viola Hatfield (O.R. 441, Page 805); thence along
said northerly line, N 83 20' 40" W. a distance of
210.00 feet to an iron pin found at the southwesterly
corner of the aforementioned Lot 1; thence along the
westerly line of said Lot 1, N 30 40' 12" W. a distance
of 97.44 feet to the Point of Beginning.

Containing 0.778 acres more or less and being subject to all easements, restrictions and rights-of-way of record.

The above description is based upon a field survey by R.W. Consultants, Inc., Engineers and Surveyors, Middletown, Ohio, Kenneth R. Combs, Ohio Professional Surveyor No. 7311 and is recorded in Volume 102, Page 49 of the Warren County Engineer's Record of Land Surveys.

Except taxes and assessments, if any, now a lien.

Parcel No.: 04-19-126-008

Prior Instrument Reference: Book 5714, Page 708 of the Warren County Recorder Deed Records.

Subject to and together with all easements, restrictions and legal highways, if any, of record; and

y.   All right, title and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, to the real property commonly known as **496 South Houston Pike, South Vienna, Ohio 45369** and having the following legal description;

Situated in Virginia Military Survey #5999, Harmony Township, Clark County, Ohio. Being all of a 169.3 acre (by deed) parcel conveyed to John Hook, Revocable Trust, by O.R. 1790, Page 2064 of the Deed of Records of Clark County, Ohio, and being a tract of land more particularly described as follows:

All of that Plats and Deeds referenced hereon, are recorded in the Plat and Deed Records of Clark County, Ohio. Starting for reference at a railroad spike found at the centerline intersection of South Houston Pike and Wilson Road;

Thence, N 33 46'34"W, with the centerline of said South Houston Road, for a distance of 51.01 feet to a Mag Nail set at the True Point of Beginning:

Page **26** of **32**

Thence, from said True Point of Beginning, N 33
46'34"W, continuing with the centerline of said South
Houston Road, for a distance of 689.17 feet to a 5/8"
iron pin set at the southwest corner of a 12.2 acre
parcel conveyed to Harry E. Burnsworth, Jr. and Grace
E. Kelly-Burnsworth by O.R. 1955, Page 74-76 and on
the south line of V.M.S. #4480:

Thence, N 50 00'00"E, with the south line of said 12.2
acre parcel and the south line of said V.M.S. #4480,
passing a fence post found at 7.00 feet and a capped
"RE Hankison" iron pin found at 514.42 feet, for a
total distance of 1060.02 feet to a 5/8"iron pin set:
Thence, N 85 02'54"E, for a distance of 175.24 feet
to a 5/8" iron pin set:

Thence, N 13 17'00"W, for a distance of 167.97 feet
to a capped "RE Hankison" iron pin found on the south
limited access right-of-way line of U.S. Route 40:

Thence Northeasterly, with a curve to the left, with
said limited access right-of-way line, having a
radius of 5789.58 feet, an arc length of 352.72 feet,
with a central angle 3 29'26" and chord length of
352.67 feet which bears N 76 49'04"E, to a 5/8" iron
pin set at a point of tangency at Station
1396+85.29/60.00 feet right of the centerline of said
U.S. Route 40 bound per ODOT right-of-way plans CLA.
40-24.31:

Thence, N 75 04'20"E, continuing with the south
limited access right-of-way line of said U.S. Route
40, for a distance of 413.74 feet to a fence post found
at Station 1400+99.50/60.00 feet right, per said ODOT
right-of-way plans CLA. 40-24.31 and the northwest
corner of a 151.77 acre parcel conveyed to William
H. Olinger, III by O.R. 1498, Page 410:

Thence, S 05 21'04"E, with the west line of said
151.77 acre parcel, for a distance of 568.26 feet to
a 5/8" iron pin set:

Thence, S 39 59'21"E, continuing with the west line
of said 151.77 acre parcel, passing a fence post found
at 3691.29 feet, for a total distance of 3691.73 feet

Page **27** of **32**

to a 5/8" iron pin set on the north line of a 57.25 acre parcel conveyed to Olinger farms, LLC. by O.R. 1735, Page 719-720 and on the north line of V.M.S. #4214.

Thence, S 49 37'45"W, with the north line of said 57.25 acre parcel and V.M.A. #4214, passing a 5/8" iron pin set at 1700.71 feet, for a total distance 1720.71 feet to a Mag nail set at the southwest corner of said 57.25 acre parcel and in the centerline of said South Houston Pike:

Thence, N 40 41'57"W, with the centerline of said South Houston Pike, for a distance of 1641.52 feet to a railroad spike found;

Thence, N 39 33'56"W, with the centerline of said South Houston Pike, for a distance of 1476.41 feet to a Mag nail set on the south line of a 4.410 acre parcel conveyed to Dana N. and Connie L. Andrews by O.R.; 386, page 20 and O.R. 1475, page 468:

Thence, N 50 51'15"E, with the south line of said 4.410 acre parcel, passing a 5/8" iron pin found at 26.07 feet, a capped "RET" iron pin found at 483.19 feet, for a total distance 671.42 feet to a "RET" iron pin found:

Thence, N 14 57'37"W, with the east line of said 4.410 acre parcel, for a distance of 396.66 feet to a 5/8" iron pin found:

Thence, S 70 04'57"W, with the north lines of said 4.410 acre parcel, a 1.875 acre parcel conveyed to Joseph and Stacy Patterson by O.R. 1843, Page 386, a 1.137 acre parcel conveyed to Lowell E. and Deloris E. Davis, Tr. by O.R. 1387, page 2182, passing a capped "RET" iron pin found at 371.50 feet and fence post found at 851.75 feet, for a total distance of 882.82 feet to the True Point of Beginning, Containing 168.8048 acre of which 1.3118 acres are in right-of-way.

Subject to all legal conditions, easements and
right-of-ways pertaining to the premises herein
described.

This description prepared by McDougall-Marsh land
Surveyors. Based on a field survey made by same in
April 2013, under the direct supervision of Thomas
K. Marsh P.S. #7735. All iron pins set are 30"x5/8"
capped "7735." Bearing are based on the south line
of Tract A, B, and C (N 50 00'00"E) as recorded in
Survey Volume 20, Page 85 of the Survey Records of
Clark County, Ohio.

Parcel No.: 130-15-05999-000-048

Prior Instrument Reference: Book 2033,
Page 1287

23.  Upon conviction of the offense alleged in Count
Twenty-Four of this Indictment, the defendants, **WILLIAM M. APOSTELOS
and CONNIE M. APOSTELOS,** shall forfeit to the United States pursuant
to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property,
real or personal, which constitutes or is derived from proceeds
traceable to said violation, including but not limited to the
following:

a.   a Forfeiture Money Judgment in the amount of
$1,900,000.00.

24.  Upon conviction of the offense alleged in Count
Twenty-Five of this Indictment, the defendants, **WILLIAM M. APOSTELOS
and CONNIE M. APOSTELOS,** shall forfeit to the United States pursuant
to 18 U.S.C. § 982(a)(1), any property, real or personal, involved

in such offense, and any property traceable to such property, including but not limited to the following:

> a. a Forfeiture Money Judgment in the amount of $150,658.75.

25. Upon conviction of the offense alleged in Count Twenty-Six of this Indictment, the defendants, **WILLIAM M. APOSTELOS and CONNIE M. APOSTELOS**, shall forfeit to the United States pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in such offense, and any property traceable to such property, including but not limited to the following:

> a. All right, title and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, to the real property commonly known as **35 Commercial Way, Springboro, Ohio 45066** and having the following legal description;
>
> Situated in the City of Springboro, Warren County, Ohio and being part of Lot 1, Springboro Commercial Park (Plat Book 31, Pages 83 and 84) and part of a 0.872 acre tract in Section 19, Town 2, Range 5, and being more particularly described as follows:
>
> Beginning at an iron pin found at the northwest corner of Lot 1, Springboro Commercial Park, said pin also being in the southerly right-of-way line of Commercial Way (60' right-of-way); thence along said right-of-way and with the northerly line of said Lot 1, the following three (3) courses and distances:
>
> (1) N 59 19' 48" E. a distance of 44.27 feet;
>
> (2) Along a curve to the right having a radius of 170.00 feet and an arc length of 85.02 feet, the chord of said curve bears N. 73 39' 26" E. a distance of 84.14 feet;

(3) N 87 59' 05" E. a distance of 158.24 feet to a 5/8" iron pin set in a new division line;

Thence leaving said right-of-way line and along said new division line, S 06 39' 20" W. a distance of 161.05 feet to a 5/8" iron pin set in the northerly line of Viola Hatfield (O.R. 441, Page 805); thence along said northerly line, N 83 20' 40" W. a distance of 210.00 feet to an iron pin found at the southwesterly corner of the aforementioned Lot 1; thence along the westerly line of said Lot 1, N 30 40' 12" W. a distance of 97.44 feet to the Point of Beginning.

Containing 0.778 acres more or less and being subject to all easements, restrictions and rights-of-way of record.

The above description is based upon a field survey by R.W. Consultants, Inc., Engineers and Surveyors, Middletown, Ohio, Kenneth R. Combs, Ohio Professional Surveyor No. 7311 and is recorded in Volume 102, Page 49 of the Warren County Engineer's Record of Land Surveys.

Except taxes and assessments, if any, now a lien.

Parcel No.: 04-19-126-008

Prior Instrument Reference: Book 5714, Page 708 of the Warren County Recorder Deed Records.

Subject to and together with all easements, restrictions and legal highways, if any, of record.

## SUBSTITUTE ASSETS

26.  If any of the forfeitable property described in paragraphs 22-25 above, as a result of any act or omission of the defendants, **WILLIAM M. APOSTELOS** or **CONNIE M. APOSTELOS**:

a.  cannot be located upon the exercise of due diligence;

b.    has been transferred or sold to, or deposited with, a third party;

c.    has been placed beyond the jurisdiction of the court;

d.    has been substantially diminished in value; or

e.    has been commingled with other property which cannot be divided without difficulty; it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b), 18 U.S.C. § 981(a)(1)(A) and (C) and 28 U.S.C. § 2461(c), to seek forfeiture of any other property of said defendants up to the value of the forfeitable property described above.

A TRUE BILL

/S/ Signed
Foreperson


CARTER M. STEWART
United States Attorney


LAURA I. CLEMMENS
Chief, Dayton Branch Office